ALEXANDER B. CVITAN (SBN 81746)
E-mail: alc@rac-law.com
MARSHA M. HAMASAKI (SBN 102720)
E-mail: marshah@rac-law.com;
PETER A. HUTCHINSON (SBN 225399), and
E-mail: peterh@rac-law.com,
CANDICE I. BRENNER (SBN 283338), Members of
E-mail: candiceb@rac-law.com
REICH, ADELL & CVITAN, A Professional Law Corporation
3550 Wilshire Blvd., Suite 2000
Los Angeles, California 90010-2421
Telephone: (213) 386-3860; Facsimile: (213) 386-5583
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSTRUCTION LABORERS TRUST FUNDS FOR SOUTHERN CALIFORNIA ADMINISTRATIVE COMPANY, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>MCEC, INC., a California corporation,<br><br>Defendant. | CASE NO.:<br><br>**COMPLAINT FOR:**<br><br>1. **MONETARY DAMAGES OF UNPAID FRINGE BENEFIT CONTRIBUTIONS AND RELATED DAMAGES DUE TO EMPLOYEE BENEFIT PLANS**<br><br>2. **SPECIFIC PERFORMANCE OF OBLIGATION TO PRODUCE RECORDS FOR AUDIT**<br><br>[29 U.S.C. §§ 1132(g)(2) and 1145;<br>29 U.S.C. § 1132(a)(3); 29 U.S.C. § 185] |

Plaintiff, Construction Laborers Trust Funds for Southern California Administrative Company, a Delaware limited liability company, alleges:

## <u>INTRODUCTION</u>

1.     This action is brought by a fiduciary administrator on behalf of employee benefit plans and against an employer in accordance with the terms and

conditions of the plans and agreements to which the employer is bound to: (a) recover unpaid monthly employee fringe benefit contributions and related damages due to the plans by the employer (Claim 1); and (b) compel the employer to produce records for an audit to determine if additional amounts are due (Claim 2).

## JURISDICTION AND VENUE

2.     This Court has jurisdiction pursuant to: sections 502(g)(2) and 515 of the Employee Retirement Income Security Act (ERISA) (29 U.S.C. §§ 1132(g)(2) and 1145); section 502(a)(3) of ERISA (codified at 29 U.S.C. § 1132(a)(3)); and section 301 of the Labor Management Relations Act (LMRA) (codified at 29 U.S.C. § 185). Pursuant to section 502(e)(2) of ERISA (codified at 29 U.S.C. § 1132(e)(2)), venue is proper in this district for each of the following reasons: the plans are administered in this district; the employer's performance and breach took place in this district; and the employer resides in this district.

## PARTIES

3.     Plaintiff ("CLTF") is an administrator of, agent for collection for, a fiduciary to, and brings this action on behalf of, the following employee benefit plans: Laborers Health and Welfare Trust Fund for Southern California; Construction Laborers Pension Trust for Southern California; Construction Laborers Vacation Trust for Southern California; Laborers Training and Re-Training Trust Fund for Southern California; Fund for Construction Industry Advancement; Center for Contract Compliance; Laborers Contract Administration Trust Fund for Southern California; and Laborers' Trusts Administrative Trust Fund for Southern California (collectively "Trust Funds"). Each of the Trust Funds is an express trust created by written agreement, an employee benefit plan within the meaning of section 3(3) of

ERISA (29 U.S.C. § 1002(3)), and a multi-employer plan within the meaning of section 3(37)(A) of ERISA (29 U.S.C. § 1002(37)(A)).  Each of the Trust Funds exists pursuant to ERISA and section 302 of the LMRA (29 U.S.C. § 186).  CLTF and the Trust Funds' principal places of business are in the County of Los Angeles, State of California.

4.      CLTF is informed and believes, and on that basis alleges, that defendant MCEC, Inc. ("EMPLOYER"):  is a corporation organized and existing under the laws of the State of California; has a principal place of business in the City of Azusa, County of Los Angeles, State of California; and does, or at all relevant times did, business in the State of California as a construction contractor in an industry affecting interstate commerce.

## AGREEMENTS

5.      At all relevant times, including from at least from August 1, 2007 through June 30, 2012, the EMPLOYER was bound to certain collective bargaining agreements of the Southern California District Council of Laborers and its affiliated local Unions (collectively "Laborers Union") known as the Master Labor Agreements, including one known as the Southern California Master Labor Agreement.

6.      Pursuant to the Master Labor Agreements, employers also become – and the EMPLOYER became – bound to the terms and conditions of the various trust agreements that created each of the Trust Funds ("Trust Agreements").

7.      Under the terms of the Master Labor Agreements and Trust Agreements, employers, including the EMPLOYER, are required to remit monthly fringe benefit

contributions ("Monthly Contributions") to each of the Trust Funds on behalf of their employees for each hour worked by (or paid for) them for work covered by the Agreements ("Covered Work").  Also, as provided for by the Laborers Health and Welfare Trust Fund for Southern California ("Health Fund"), which is one of the Trust Funds, the EMPLOYER obtained health insurance for its non-bargaining unit employees ("Non-Jobsite Agreement").  The EMPLOYER was bound to its Non-Jobsite Agreement from at least January 1, 2008 through June 30, 2012.  Pursuant to its Non-Jobsite Agreement, the Employer was required to remit Monthly Contributions (to the Health Fund) on behalf of its non-bargaining unit employees. Where referred to collectively herein, the Master Labor Agreements, Trust Agreements and Non-Jobsite Agreement are referred as "the Agreements."

8.     Under the terms of the Agreements, employers, including the EMPLOYER, are required to submit to the Trust Funds, with their Monthly Contributions, monthly reports, itemized by project, listing the names of their employees who performed Covered Work, their Social Security numbers, the hours of Covered Work performed by each, and the resulting Monthly Contributions due for each ("Monthly Reports").  The Trust Funds rely on Monthly Reports – and the accuracy of those reports – to determine the amount of Monthly Contributions due to the Trust Funds by employers and the credit toward fringe benefits to be allocated to their employees.

9.     The Agreements provide for the payment of interest on delinquent Monthly Contributions from the date due at a rate set by the trustees of the Trust Funds.  The trustees have set that rate at five percent (5%) above the prime rate set by the Federal Reserve Board of San Francisco, California.  The Agreements also provide for the payment of liquidated damages for each month of delinquent Monthly Contributions or Monthly Reports, for each Trust Fund separately, in the amount of

twenty percent (20%) of the delinquent Monthly Contributions due to the Trust Fund or $25, whichever is greater (except with respect to the Laborers Contract Administration Trust Fund for Southern California, which assesses liquidated damages at the greater of $20 or ten percent (10%)).  In addition, employers are required to pay fees for the submission of checks not honored by the banks upon which they are drawn.

10.    The failure of employers to pay Monthly Contributions when due causes damages to the Trust Funds and its participants beyond the value of the unpaid Monthly Contributions, which are difficult to quantify.  Apart from the fees and costs incurred in litigation, the harm caused includes the cost of collecting the Monthly Contributions from employers or third parties, the cost of special processing to restore employee fringe benefit credits because of late Monthly Contributions, employee loss of health insurance coverage (even if later restored) and medical harm to participants and beneficiaries who might have foregone medical care when notified that their insurance ceased because of their employer's failure to pay Monthly Contributions.  The liquidated damages provision of the Agreements was meant to compensate for the loss to the Trust Funds, which is incurred even if the Monthly Contributions for a given month are later paid.  It is based on the Trust Funds' ratio of collection costs over amounts collected, which are regularly reported to the Trust Funds' trustees.

11.    Under the terms of the Agreements, employers, including the EMPLOYER, agree to subcontract Covered Work only to entities that are signatory to a Master Labor Agreement applicable to the work performed.  If an employer subcontracts Covered Work to a non-signatory entity, or allows a subcontractor to subcontract Covered Work to a non-signatory entity, the employer becomes liable to the Trust Funds in at least an amount equal to the Monthly Contributions, interest and

liquidated damages that would have been due if a signatory entity had performed the Covered Work.

12.     Under the terms of the Agreements, employers, including the EMPLOYER, agree not to subcontract Covered Work to entities that are delinquent to the Trust Funds or allow lower-tier subcontractors to perform Covered Work if they are so delinquent.  If an employer subcontracts Covered Work to an entity that is delinquent in its Monthly Reports or Monthly Contributions to the Trust Funds, or allows a lower-tier subcontractor that is so delinquent to perform Covered Work, the employer becomes under the terms of the Agreements liable to the Trust Funds for the Monthly Contributions due by the delinquent subcontractor and any delinquent lower-tier subcontractors.

13.     The Agreements provide the Trust Funds with specific authority to examine the payroll and business records of employers, including the EMPLOYER, to determine whether they have reported all hours worked by (or paid for) their employees who perform Covered Work, and whether they have paid the appropriate Monthly Contributions and other amounts due by them to the Trust Funds.  The Agreements further provide that employers, including the EMPLOYER, shall pay the Trust Funds' audit fees if they are delinquent to the Trust Funds.  The Trust Funds have delegated the authority to perform such audits to CLTF.

14.     The Agreements require employers to pay the Trust Funds' attorneys' fees and costs of litigation to enforce the Agreements' foregoing terms, including the Monthly Contribution, Monthly Reporting, subcontracting and audit provisions.

///

///

## FIRST CLAIM FOR RELIEF

**(For Monetary Damages of Unpaid Fringe Benefit Contributions
and Related Damages Due to Employee Benefit Plans)**

15.     CLTF repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 14 above as if fully set forth here.

16.     The EMPLOYER has failed to submit Monthly Contributions and related damages due by it to the Trust Funds.  Pursuant to the Agreements and sections 502(g)(2) and 515 of ERISA (29 U.S.C. §§ 1132(g)(2) and 1145), the EMPLOYER owes the Trust Funds a presently known total of $110,995.24 for unpaid or late-paid Monthly Contributions (and/or late-submitted Monthly Reports) and subcontracting violations for some or all of the months of September 2007 through May 2012 ("Known Delinquency").  The Known Delinquency consists of $32,604.31 in unpaid Monthly Contributions, $10,359.99 in interest (through August 12, 2014), $7,609.39 in liquidated damages, $2,400.00 in audit fees and $58,021.55 in subcontracting violations.

17.     CLTF will establish by proof at the time of trial or through dispositive motion the Known Delinquency and any additional amounts determined to be due to the Trust Funds by the EMPLOYER, including any additional Monthly Contributions, interest, liquidated damages, audit fees, fees incurred by the Trust Funds as a result of the submission of checks not honored by the bank upon which they were drawn, attorneys' fees and costs, and amounts owed as a result of work performed by subcontractors of the EMPLOYER (or lower-tier subcontractors).  If deemed necessary by the Court, CLTF will amend its complaint to add any additional amounts determined to be due.  Any and all conditions to the EMPLOYER's obligations under the Agreements to pay the Known Delinquency and any additional

amounts due under the Agreements to the Trust Funds have been met.

18.     Under the terms of the Agreements and section 502(g)(2)(D) of ERISA (29 U.S.C. § 1132(g)(2)(D)), CLTF is entitled to an award of its attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF
### (For Specific Performance of
### Obligation to Produce Records for Audit)

19.     CLTF repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 18 above as if fully set forth here.

20.     CLTF requests that the Court exercise its authority under 29 U.S.C. §§ 1132(g)(2)(E) and 1132(a)(3) to order the EMPLOYER to comply with its obligation under the Agreements and ERISA to fully produce its books and records in order for CLTF to complete an audit to determine if additional amounts are due.

21.     An award of attorneys' fees and costs is provided for by Agreements and under sections 502(g)(1) and (g)(2) of ERISA (29 U.S.C. § 1132(g)(1) and (g)(2)).

**WHEREFORE, CLTF prays for judgment as follows:**

ON CLTF'S FIRST CLAIM FOR RELIEF
[For Monetary Damages of Unpaid Fringe Benefit Contributions
and Related Damages Due to Employee Benefit Plans]

A.     For $32,604.31 in unpaid Monthly Contributions, as required by the

1  Agreements and 29 U.S.C. § 1132(g)(2)(A).

2

3      B.      For $10,359.99 in interest (through August 12, 2014) on unpaid or late

4  paid Monthly Contributions at the rate of five percent above the variable prime rate

5  set by the Federal Reserve Board of San Francisco, California, plus such additional

6  interest that has or does hereafter accrue from August 12, 2014, as required by the

7  Agreements and 29 U.S.C. § 1132(g)(2)(B).

8

9      C.      For $7,609.39 in liquidated damages for each month of unpaid or late-

10  paid Monthly Contributions at, for each of the Trust Funds separately, the greater of

11  20% or $25 (except with respect to the Laborers Contract Administration Trust Fund

12  for Southern California, for which liquidated damages are sought at the greater 10%

13  or $20), as required by the Agreements and 29 U.S.C. § 1132(g)(2)(C).

14

15      D.      For $2,400.00 in audit fees, as required by the Agreements and

16  29 U.S.C. § 1132(g)(2)(E).

17

18      E.      For $58,021.55 for the use of subcontractors not signatory to a collective

19  bargaining agreement with the Laborers Union, as required by the Agreements.

20

21      F.      For, according to proof, any additional Monthly Contributions, interest,

22  liquidated damages, audit fees, fees incurred by the Trust Funds as a result of the

23  submission of checks not honored by the bank upon which they were drawn, and

24  amounts owed as a result work performed by subcontractors of the EMPLOYER (or

25  lower-tier subcontractors) determined to be due, pursuant to the Agreements and 29

26  U.S.C. §§ 1132(g)(2) and 1145.

27

28      G.      For reasonable attorneys' fees and costs of suit, as required by the

266151.1                                          9

Agreements and 29 U.S.C. § 1132(g)(2)(D).

H.     For such other and further relief that this Court deems appropriate, pursuant to any authority of the Court, including but not limited to the authority established by 29 U.S.C. §§ 1132(g)(2)(E) and 1132(a)(3).

## ON CLTF'S SECOND CLAIM FOR RELIEF

[For Injunctive Relief Compelling Specific

Performance of Obligation to Produce Records for Audit]

A.     For the issuance of injunctive relief pursuant to the Agreements and 29 U.S.C. §§ 1132(g)(2)(E) and/or 1132(a)(3) ordering the EMPLOYER and its managing officers, managing employees, agents and successors, as well as all those in active concert or participation with any one or more of them, to submit to an audit of the EMPLOYER's records, to fully cooperate with CLTF with respect to the audit in order for CLTF to determine the total amount due to the Trust Funds by the EMPLOYER, and, specifically, to produce to CLTF the following payroll and business records – and any other records determined by CLTF to be necessary to conduct a full audit – for inspection, examination and copying:

A.1.   All of the EMPLOYER's payroll and employee records, as well as any other records that might be relevant to a determination of the work performed by the EMPLOYER, its employees, its subcontractors, its lower-tier subcontractors and the employees of the EMPLOYER's subcontractors and lower-tier subcontractors, including but not limited to payroll journals, employee earnings records, certified payroll records, payroll check books and stubs, cancelled payroll checks, payroll time cards and state and federal tax returns (and all other state and federal tax records), as well as labor distribution journals and any other records that might be relevant to an

identification of the employees who performed work for the EMPLOYER, its subcontractors or lower-tier subcontractors, or which might be relevant to a determination of the projects on which the EMPLOYER, its employees, its subcontractors, lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors performed work, including any records that provide the names, addresses, Social Security numbers, job classification or the number of hours worked by any one or more employee;

A.2.   All of the EMPLOYER's job files for each contract, project or job on which the EMPLOYER, its employees, its subcontractors, its lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors worked, including but not limited to all correspondence, agreements and contracts between the EMPLOYER and any general contractor, subcontractor, owner, builder or developer, as well as all field records, job records, notices, project logs, supervisors' diaries and notes, employees' diaries and notes, memoranda, releases and any other records that relate to the supervision of the EMPLOYER's employees, its subcontractors, its lower-tier subcontractors or the employees of its subcontractors and lower-tier subcontractors, or the projects on which the EMPLOYER, its employees, its subcontractors, its lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors performed work;

A.3.   All of the EMPLOYER's records related to cash receipts, including but not limited to the EMPLOYER's cash receipts journals, accounts receivable journals, accounts receivable subsidiary ledgers and billing invoices for all contracts, projects and jobs on which the EMPLOYER, its employees, its subcontractors, its lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors performed work;

///

266151.1

11

A.4.   All of the EMPLOYER's bank statements, including but not limited to those for all checking, savings and investment accounts;

A.5.   All of the EMPLOYER's records related to disbursements, including but not limited to vendors' invoices, cash disbursement journals, accounts payable journals, check registers and all other records which indicate disbursements;

A.6.   All collective bargaining agreements between the EMPLOYER and any trade union, and all records of contributions by the EMPLOYER to any trade union trust fund; and

A.7.   All records related to the formation, licensing, renewal or operation of the EMPLOYER.

B.     For reasonable attorneys' fees and costs of suit, as required by the Agreements and provided for under 29 U.S.C. § 1132(g)(1).

C.     For such other and further relief that this Court deems appropriate, pursuant to any authority of the Court, including but not limited to the authority established by 29 U.S.C. § 1132(g)(2)(E) and 29 U.S.C. § 1132 (a)(3).

DATED:  August 15, 2014              REICH, ADELL & CVITAN
                                     A Professional Law Corporation

                                     By:_____/s/_____
                                           PETER A. HUTCHINSON
                                           Attorneys for Plaintiff